**Tibor KAMINSZKY and Judit Kaminszky, Appellants,**

v.

**Abel W. KUKUCH, Appellee.**

**No. 46A03–8905–CV–188.**

Court of Appeals of Indiana, Third District.

May 7, 1990.

Lowell E. Enslen, Gary K. Matthews, Enslen, Enslen & Matthews, Hammond, for appellants.

Paul A. Rake, Eichhorn, Eichhorn & Link, Hammond, for appellee.

STATON, Judge.

Judit and Tibor Kaminszky appeal from a negative judgment in favor of Abel W. Kukuch. They had sought to have the sale of a house rescinded for breach of an implied warranty of fitness for habitation.

The Kaminszkys present four issues which we consolidate and restate as:

1. Whether Kukuch, as seller, is liable for a breach of the implied warranty of fitness for habitation?

2. Whether Kukuch had a duty to disclose the presence of urea-formaldehyde foam insulation?

3. Whether a clause in the purchase agreement stating the buyers accepted the house "as is", and that the buyers relied on their own inspection for the condition of the house, released the seller from liability for latent defects?

We affirm.

The evidence supporting the findings of the trial court shows that Abel Kukuch owned a house that he used as rental property. In 1978 he hired a professional to install insulation. He testified that he relied on the expertise of the contractor to use the best insulation available but that he was not informed what kind of insulation was used. R. 797.

At the time the insulation was installed Deena Hardin and her family were renting the house. Hardin testified that it was obvious the house had been insulated because there were plugs visible on the outside of the house. R. 770, 785. She also testified that she and her family experienced no problems as a result of the insulation. R. 780–785.

Prior to the Kaminszkys' purchase of the house in 1985, they inspected the house three times. During one of their inspections they observed insulation similar to what had been in their previous residence. They did not inquire about the type of insulation.

After they purchased the house they noticed an odor; Judit noticed a "different" taste in her mouth and began to experience skin irritation and dizziness. While cleaning the house the Kaminszkys discovered an access panel covered with wallpaper. On closer inspection they found a different type of insulation than they had observed

previously. They took a sample of this insulation to the Lake County Health Department where it was determined to be urea-formaldehyde foam insulation. At this point Judit called the realtor and told him to "reverse the buy". R. 491.

Several months later the Kaminszkys filed a complaint against Kukuch alleging breach of the implied warranty of habitability, failure to disclose, and mutual mistake.[1] The Kaminszkys asked for rescission of the sale and damages. After a three day bench trial the lower court ruled in favor of Kukuch. The trial court made specific and detailed findings of fact in support of the judgment.

■ When the trial court has entered special findings, we apply a two-tier standard of review. First, we must determine whether the evidence supports the findings, and then, we must determine whether the findings support the judgment. Special findings will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Northwest Calf Farms, Inc. v. Poirier* (1986), Ind.App., 499 N.E.2d 1165, 1166–7, *reh. den., trans. den.*

### I.

#### *Implied Warranty*

■ Kaminszkys contend that the formaldehyde insulation is a latent defect which constitutes a breach of the implied warranty of habitability and thus requires rescission of the sale. We need not determine whether the urea-formaldehyde foam insulation constitutes a latent defect because Kukuch is not a builder-vendor and therefore cannot be held liable for the breach of an implied warranty of habitability.

The Indiana Supreme Court initially applied the warranty theory in *Theis v. Heuer* (1972), 264 Ind. 1, 280 N.E.2d 300, 306. In *Theis* our Supreme Court held that there is "an implied warranty of fitness for inhabitation in the sale of a new house by the

builder-vendor to the immediate purchaser." *Id.* The warranty was extended to subsequent purchasers by *Barnes v. Mac-Brown and Company, Inc.* (1976), 264 Ind. 227, 342 N.E.2d 619, 620. The warranty was limited to builder-vendors by *Vetor v. Shockey* (1980), Ind.App., 414 N.E.2d 575, 577.

Kaminszkys cite *Callander v. Sheridan* (1989), Ind.App., 546 N.E.2d 850, *reh. den., trans. pending,* for the proposition that Kukuch is a builder-vendor liable for the implied warranty of habitability. In *Callander* the seller assumed the responsibilities of a builder-vendor by acting as a general contractor: he modified the house plan, hired sub-contractors and supervised their work. *Id.* at 852. Kukuch did not undertake such responsibility; he hired a professional to install the insulation and he relied on that individual's expertise. Kukuch is not liable under the theory of breach of the implied warranty of habitability.

### II.

#### *Disclosure*

■ The Kaminszkys contend that Kukuch should have disclosed the presence of formaldehyde insulation. The trial court found that:

> there is no contention that the defendant misrepresented or made any fraudulent representations to the plaintiffs in regard to the condition of the house.

R. 400. Kukuch testified that he relied on the installer to use the best insulation available and that he did not know what kind of insulation had actually been used. R. 797. The evidence supports the finding of the trial court.

### III.

#### *Inspection Clause*

■ The purchase agreement contained an inspection clause which stated in pertinent part:

---

**1.** Although mutual mistake was offered as an issue in Kaminszkys' brief, no argument was provided on this issue; therefore it will not be discussed in this opinion. See Ind. Appellate Rule 8.3(A)(7).

The property has been inspected and accepted by the buyer "as is" in its present condition and shall be delivered in such present condition to them at the time provided ... Purchaser is relying entirely for its condition upon his own examination and purchaser hereby releases the seller, brokers, REALTOR(S) and sales people herein from any and all liability relating to any defect or deficiency affecting said real estate, which release shall survive the closing of the transaction.

R. 451.

Kaminszkys cite *Callander v. Sheridan* at 546 N.E.2d 853, for the proposition that this clause does not release a seller from liability for latent defects. Their argument overlooks the fact that Callander, the seller in that case, was also a builder-vendor. As a builder-vendor, Callander could not escape liability by reliance on the release contained in the inspection clause.

In contrast, Kukuch is only a seller, not a builder-vendor, therefore, the inspection clause protects him from liability for latent defects.

Affirmed.

HOFFMAN and CONOVER, JJ., concur.